No. 25-13007

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ALABAMA STATE CONFERENCE OF THE NAACP, *et al.*,

*Plaintiffs-Appellees*,

v.

SECRETARY OF STATE FOR THE STATE OF ALABAMA,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Northern District of Alabama
Case No. 2:21-cv-01531-AMM

## PLAINTIFFS' OPPOSITION TO SECRETARY OF STATE'S EMERGENCY MOTION TO VACATE INJUNCTIONS IN LIGHT OF *LOUISIANA V. CALLAIS* AND FOR THE IMMEDIATE ISSUANCE OF THE MANDATE, OR, IN THE ALTERNATIVE, TO STAY THE INJUNCTIONS

Deuel Ross
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th St. N.W. Ste. 600
Washington, DC 20005

Stuart Naifeh
Kathryn Sadasivan
Brittany Carter
Colin Burke
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector St., 5th Fl.,
New York, NY 10006

Alison Mollman
AMERICAN CIVIL LIBERTIES UNION
OF ALABAMA
P.O. Box 6179, Montgomery, AL 36106

David Dunn
HOGAN LOVELLS LLP
390 Madison Avenue, New York, NY 10017

Davin M. Rosborough
Dayton Campbell-Harris
Theresa J. Lee
Sophia Lin Lakin
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St., New York, NY 10004

Jacob Van Leer
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th St. NW
Washington, DC 20005

Bradley E. Heard
Jack Genberg
SOUTHERN POVERTY LAW CENTER
1101 17th Street NW, Suite 550
Washington, DC 20036

Jessica L. Ellsworth
Jo-Ann Tamila Sagar
HOGAN LOVELLS LLP
555 Thirteenth Street, NW
Washington, DC 20004

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1–1 through 26.1–5, the undersigned counsel certifies that the following listed persons and parties may have an interest in the outcome of this case:

1. ACLU of Alabama

2. Aden, Leah C.

3. Alabama Attorney General's Office

4. Alabama State Conference of the NAACP

5. Allen, Amanda N.

6. Allen, Hon. Wes

7. American Civil Liberties Union Foundation

8. Ashton, Anthony

9. Balch & Bingham LLP

10. Barnes, Anna-Kathryn

11. Bowdre, A. Barrett

12. Burke, Colin

13. Burrell, Ashley

14. Campbell-Harris, Dayton

15. Carter, Brittany

16. Chandler, Laquisha

17. Davis, James W.

18. Douglas, Scott

19. Duggan, Matthew R.

20. Dunn, David

21. Ebenstein, Julie A.

22. Ellsworth, Jessica L.

23. Ettinger, James W.

24. Faulks, LaTisha Gotell

25. Gbe, Harmony R.

26. Geiger, Soren A.

27. Genberg, Jack

28. Greater Birmingham Ministries

29. Harris, A. Reid

30. Hattix, Laurel Ann

31. Heard, Bradley E.

32. Hogan Lovells US LLP

33. Jackson, Sidney

34. LaCour Jr., Hon. Edmund G.

35. Lakin, Sophia Lin

36. Lancaster, Riley Kate

37. Lawsen, Nicki

38. Lee, Theresa J.

39. Livingston, Sen. Steve

40. Manasco, Hon. Anna M.

41. Marshall, Hon. Steve

42. Mauldin, Dylan L.

43. Maze, Hon. Corey L.

44. McClendon, (former) Sen. Jim

45. McKay, Charles A.

46. Merrill, Hon. John H.

47. Messick, Misty S. Fairbanks

48. Milligan, Evan

49. Mink, Richard D.

50. Mollman, Alison

51. NAACP Legal Defense and Educational Fund, Inc.

52. Naifeh, Stuart

53. National Association for the Advancement of Colored People

54. Newsom, Hon. Kevin C.

55. Olofin, Victor

56. Overing, Robert M.

57. Pringle, Rep. Chris

58. Rand, Paul

59. Rosborough, Davin

60. Ross, Deuel

61. Sadasivan, Kathryn

62. Sagar, Jo-Ann

63. Seiss, Benjamin M.

64. Shapiro, Avner

65. Short, Caren E.

66. Simelton, Benard

67. Smith, Brenton M.

68. Southern Poverty Law Center

69. Stewart, Shelita M.

70. Stone, Khadidah

71.    Taunton, Michael P.

72.    Thomas, James

73.    Thompson, Blayne R.

74.    Turrill, Michael

75.    Unger, Jess

76.    van Leer, Jacob

77.    Walker, J. Dorman

78.    Wallace, Janette McCarthy

79.    Weisberg, Liza

80.    Welborn, Kaitlin

81.    Wiggins, Childs, Pantazis, Fisher & Goldfarb, LLC

82.    Wilson, Thomas A.

83.    Woodard, J. Scott

No publicly traded company or corporation has an interest in the outcome of the case or appeal.

Respectfully submitted this 6th day of May 2026.

/s/ Davin Rosborough
*Counsel for Plaintiffs-Appellees*

**TABLE OF CONTENTS**

Page

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ................................................... C-1

TABLE OF AUTHORITIES ............................................................................iii

INTRODUCTION ............................................................................................. 1

ARGUMENT .................................................................................................... 3

I.  The Emergency Relief Requested Is Both Improper and Unnecessary .... 3

  A.  Vacating or staying the injunction to allow for redistricting would
      interfere with an election where voters are voting, violating
      *Purcell* ...................................................................................... 3

  B.  The Special Session presents no emergency or exigency ............... 7

II.  Defendants Have Not Made a Sufficient Showing to Require Emergency
     Vacatur or a Stay, and the Evidence Merits Full Briefing After *Callais* .. 9

  A.  Based on the Court's findings from trial, Defendants have not
      shown a high likelihood of reversal under the *Callais* standard that
      justifies a stay or immediate vacatur ............................................... 9

    1.  *Plaintiffs' Illustrative Plan and the Remedial Plan satisfy the*
        Callais *preconditions and the State's identified redistricting
        goals* ...................................................................................... 9

    2.  *Consistent with* Callais, *the district court found that race,
        rather than party, drives racially polarized voting in Alabama*
        ................................................................................................ 13

    3.  *Plaintiffs provided ample evidence of present-day intentional
        discrimination in Alabama, including regarding voting* ....... 14

i

Page

B. Plaintiffs and their members will face irreparable harm if the motion is granted, and the public interest and equities weigh against it ...................................................................................... 16

III. The Secretary Has Not Justified Departing from the Normal Course of Briefing and Argument, and His Request for a Stay Is Improper and Should Have Been Brought First in the District Court ........................... 19

CONCLUSION .................................................................................................. 21

CERTIFICATE OF COMPLIANCE ................................................................. 23

CERTIFICATE OF SERVICE ......................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**CASES:**

*Abbott v. League of United Latin Am. Citizens*,
146 S. Ct. 418 (2025)...................................................................... 1, 3

*Ala. State Conf. of NAACP v. Allen*,
No. 25–13007, 2025 WL 3091433 (11th Cir. Oct. 30, 2025) ................... 2, 5

*Ala. State Conf. of the NAACP v. Allen*,
796 F. Supp. 3d 759 (N.D. Ala. 2025) ............................................... 7, 9–15

*Ala. State Conf. of the NAACP v. Allen*,
809 F. Supp. 3d 1366 (N.D. Ala. 2025) .............................................. 11, 12

*Alexander v. S.C. State Conf. of the NAACP*,
602 U.S. 1 (2024)............................................................................. 10

*Allen v. Milligan*,
599 U.S. 1 (2023)............................................................................. 9

*Charles H. Wesley Educ. Found., Inc. v. Cox*,
408 F.3d 1349 (11th Cir. 2005) ........................................................ 17, 18

*Democratic Exec. Comm. of Fla. v. Lee*,
915 F.3d 1312 (11th Cir. 2019) ........................................................ 3, 17

*Elrod v. Burns*,
427 U.S. 347 (1976).......................................................................... 17

*Garcia-Mir v. Meese*,
781 F.2d 1450 (11th Cir. 1986) ........................................................ 3, 20

*Griffin v. N.C. State Bd. of Elections*,
781 F. Supp. 3d 411 (E.D.N.C. 2025) ................................................ 6

*League of Women Voters of N.C. v. North Carolina*,
769 F.3d 224 (4th Cir. 2014) ............................................................ 17

*Louisiana v. Callais*,
Nos. 24–109 & 24–110, 2026 WL 1153054 (U.S. Apr. 29, 2026) ...... 2, 9–15

iii

Page(s)

*Malliotakis v. Williams*,
146 S. Ct. 809 (2026).................................................................. 1, 4

*Merrill v. Milligan*,
142 S. Ct. 879 (2022).................................................................. 5, 6

*Negron v. City of Miami Beach*,
113 F.3d 1563 (11th Cir. 1997) .................................................. 2

*Nken v. Holder*,
556 U.S. 418 (2009)................................................................... 16

*Opinion of the Justs.*,
47 So. 2d 714 (Ala. 1950)........................................................... 7

*Purcell v. Gonzalez*,
549 U.S. 1 (2006)..................................................................... 3, 18

*Reynolds v. Sims*,
377 U.S. 533 (1964)..................................................................... 1

*Robinson v. Callais*,
144 S. Ct. 1171 (2024).................................................................. 5

*Roe v. State of Ala. By & Through Evans*,
43 F.3d 574 (11th Cir. 1995) .................................................. 6, 17

*Ruiz v. Estelle*,
650 F.2d 555 (5th Cir. 1981) .................................................... 20

*Siegel v. LePore*,
234 F.3d 1163 (11th Cir. 2000) .................................................. 16

*Sw. Voter Registration Educ. Project v. Shelley*,
344 F.3d 914 (9th Cir. 2003) ....................................................... 4

*Swain v. Junior*,
958 F.3d 1081 (11th Cir. 2020) .................................................. 16

*Thomas v. Att'y Gen., Fla.*,
795 F.3d 1286 (11th Cir. 2015) ............................................... 19, 20

# TABLE OF AUTHORITIES–CONTINUED

Page(s)

*United States v. Classic*,
 313 U.S. 299 (1941)......................................................................... 17

*United States v. McGregor*,
 824 F. Supp. 2d 1339 (M.D. Ala. 2011)........................................ 15

*Wright v. Sumter Cnty. Bd. of Elections*,
 979 F.3d 1282 (11th Cir. 2020) ..................................................... 10

**CONSTITUTIONAL PROVISION:**

Ala. Const., art. IX, § 200 ...................................................................... 7

**STATUTES**

52 U.S.C. § 20310 ................................................................................... 6

Ala. Code § 17–11–5 (2025)................................................................... 6

Ala. Code § 17–11–12 (2025)................................................................. 6

**RULES:**

Fed. R. App. P. 8(a)(1)......................................................................... 20

Fed. R. App. P. 8(a)(2)(A)(i) ............................................................... 20

# INTRODUCTION

The Secretary's motion presents no emergency. It arises from a contrived crisis, itself birthed from political expediency. In the *midst of voting* for Alabama's May primary election, the Secretary makes several remarkable requests that would thrust this Court into "'[l]ate judicial tinkering' that 'can lead to disruption and to unanticipated and unfair consequences for candidates, political parties, and voters, among others.'" *Malliotakis v. Williams*, 146 S. Ct. 809, 811 (2026) (Alito, J., concurring) (citation omitted); *cf. Abbott v. League of United Latin Am. Citizens*, 146 S. Ct. 418, 419 (2025) (staying a decision that "improperly inserted itself into an active primary campaign, causing much confusion").

The Secretary asks for this Court's late intervention in service of discarding thousands of legally cast ballots and propelling Alabama into a situation where "[v]oters and candidates everywhere are bound to be confused," Ala. Sec'y of State's Mot. to Stay at 39, *Merrill v. Milligan*, No. 21–1086 (U.S. Jan. 28, 2022), as "the 'State's election machinery is already in progress,'" Ala. Sec'y of State Reply Br. on Mot. to Stay at 26, *Merrill v. Milligan*, No. 21–1086 (U.S. Feb. 2, 2022) (quoting *Reynolds v. Sims*, 377 U.S. 533, 585 (1964)).

Even on the merits of his arguments, the Secretary also cannot satisfy the standard for an emergency stay or vacatur because he cannot meet a single prong of

1

that test. A fair review of the district court's opinions shows that assessing the implications of *Louisiana v. Callais*, Nos. 24–109 & 24–110, 2026 WL 1153054 (U.S. Apr. 29, 2026), on this record requires far more than a three-day glance. A close look shows that Plaintiffs have all the evidence for success under the revised standard, including race-blind maps that meet the State's redistricting standards, evidence disentangling race and party in voting patterns, and substantial evidence of recent intentional racial discrimination in voting.

At bottom, the Secretary asks this Court to dispense with merits briefing despite over four years of litigation and an eight-day trial for which the district court had a "special vantage point . . . to conduct an intensely local appraisal," *Negron v. City of Miami Beach*, 113 F.3d 1563, 1566 (11th Cir. 1997) (citation omitted), in favor of this three-day briefing schedule. And he does so after this Court has already denied another of his stay motions. *Ala. State Conf. of NAACP v. Allen*, No. 25–13007, 2025 WL 3091433 (11th Cir. Oct. 30, 2025).

Yet he relies on a single inapposite case where the Court remanded on a limited issue to the district court after its dismissal of the plaintiffs' habeas petition. This case does not create any legal standard that would apply here. Moreover, the Secretary asks for relief from this Court in violation of the Federal Rules of Appellate Procedure, which required him to first seek relief in the district court.

The Court has its choice of reasons to reject the Secretary's extraordinary requests, any one of which is sufficient to defeat the motion.

**ARGUMENT**

Granting a stay pending an appeal, or emergency vacatur, is an "exceptional" occurrence—appellate courts "must always be diffident in interposing [their] power . . . into the province of the trial court and its orders save upon full briefing and mature reflection." *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986). Appellants must make a "strong showing" of likelihood of success on the merits and irreparable injury absent a stay, both of which require "more than the mere possibility." *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1317 (11th Cir. 2019). The Court must also consider whether issuing a stay will substantially injure other parties and where the public interest lies. *Id*.

**I.      The Emergency Relief Requested Is Both Improper and Unnecessary.**

**A. Vacating or staying the injunction to allow for redistricting would interfere with an election where voters are voting, violating *Purcell*.**

The Secretary asks this Court to order relief that would run smack into the Supreme Court's longstanding disapproval of disrupting a state's voting rules close to an election. *See, e.g.*, *Purcell v. Gonzalez*, 549 U.S. 1 (2006). Here, granting the Secretary's motion would not only bless the Court "improperly insert[ing] itself into an active primary campaign, causing much confusion," *Abbott*, 146 S. Ct. at 419,

3

but would require the actual discarding of thousands of votes already properly cast by eligible Alabamians in an *ongoing election*. Just weeks ago, Justice Alito bemoaned—in a case where voting was still weeks away—"'[l]ate judicial tinkering' that 'can lead to disruption and to unanticipated and unfair consequences for candidates, political parties, and voters, among others.'" *Malliotakis*, 146 S. Ct. at 811 (Alito, J., concurring) (citation omitted). But that is precisely what the Secretary asks this Court to do by revoking the operative Senate map and reverting to the previously enjoined 2021 plan in the middle of voting.

The Secretary has not cited a single case in which a federal court has interfered in an ongoing election whatsoever, let alone based on a change in the law that will likely not lead to a different result in the underlying case. Indeed, "[t]he decision to enjoin an impending election is so serious that the Supreme Court has allowed elections to go forward even in the face of an undisputed constitutional violation." *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003). In adopting the Secretary's arguments in a 2022 decision involving a challenge to Alabama's congressional maps, Justice Kavanaugh explained the consequences: court intervention to change Alabama's congressional map when the beginning of voting in the primary was *seven weeks away*, even with "heroic efforts by . . . state and local authorities in the next few weeks . . . likely would not be

4

enough to avoid chaos and confusion." *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J., concurring).

Even in *Callais* itself, the Supreme Court stayed the district court's injunction on *Purcell* grounds many *months* before the next relevant election—well before active primary election voting was occurring. *Robinson v. Callais*, 144 S. Ct. 1171 (2024). The Secretary may point to the Supreme Court's decision in *Callais* to send down the decision before the time under Supreme Court Rule 45.3 has passed. *See Callais v. Louisiana*, No. 25A1197 (U.S. May 4, 2026). But the decision was based on the Court's [mistaken] belief that appellants there had "not expressed any intent to ask this Court to reconsider its judgment," and thus did not consider the propriety of interfering with ongoing election. *Id.* at 1. And of course, *Callais* concerned a map that the Supreme Court has already declared unconstitutional—not one which, as here, the parties have not yet briefed the merits of the appeal and where this Court has already denied a stay. *Ala. State Conf. of NAACP v. Allen*, No. 25–13007, 2025 WL 3091433 (11th Cir. Oct. 30, 2025).

Judicial intervention here would cause mass confusion for voters, election administrators, and candidates. Alabama voters will select their candidates for State Senate and many other offices in statewide primary elections on May 19. But voting began weeks ago. No later than April 4, Alabama election officials began mailing

out absentee ballots for this election as required under the Uniformed and Overseas Citizen Absentee Voting Act. 52 U.S.C. § 20310. Absentee ballots for the May primary elections were "deliver[ed] to the absentee election manager[s]" no later than March 25, Ala. Code § 17–11–12 (2025), and election managers have since provided those ballots to qualified voters, including in-person, upon receipt of a valid application for an absentee ballot, Ala. Code § 17–11–5 (2025).

With the May primary election ongoing, judicial intervention will disenfranchise voters who already cast their ballots, confuse all voters, and raise serious constitutional concerns by changing voting rules after voting has already begun. *See Roe v. State of Ala. By & Through Evans*, 43 F.3d 574, 580 (11th Cir. 1995) (finding a substantive due process violation where "plaintiffs have demonstrated fundamental unfairness" in election procedures due to a ruling that occurred after voting). It is "hard to envision a more 'severe restriction' than retroactive invalidation of one's vote." *Griffin v. N.C. State Bd. of Elections*, 781 F. Supp. 3d 411, 449 (E.D.N.C. 2025) (citation omitted) (three-judge court).

It is an understatement to say that the Secretary has "not established that the changes" requested "are feasible without significant cost, confusion, or hardship," *Merrill*, 142 S. Ct. at 881–82 (Kavanaugh, J., concurring). Instead, he hands this Court a lit match to throw on an electoral bonfire.

6

**B. The Special Session presents no emergency or exigency.**

Judicial intervention here is also inappropriate because no emergency exists. Governor Ivey chose to call a preemptive special legislative session in the hope of sanctioning do-over primaries under different maps if the district court's injunctions are vacated or modified. *See* Proclamation, Dkt. 65-5. The Secretary now relies on the State's own self-imposed, eleventh-hour special session as justification for demanding emergency vacatur and bypassing full briefing on and careful consideration of the implications of *Callais* in this distinct matter. But the special session's goal is to pass legislation that would allow a special election—discarding the votes cast in the ongoing primary—*only if the Court decides* to vacate the injunction. *Id*. In other words, rather than calling a special session in the event the injunction is vacated, this is the Legislature's attempt to have the tail wag the dog.

Alabama's Constitution prevents the Legislature from drawing new Senate maps until after the 2030 census. *See* Ala. Const., art. IX, § 200. This ban on mid-decade redistricting is well recognized. *See, e.g.*, *Ala. State Conf. of the NAACP v. Allen* ("*Ala. NAACP I*"), 796 F. Supp. 3d 759, 769 (N.D. Ala. 2025) ("Alabama law prohibits mid-decade redistricting for state legislative seats . . . ."); *Op. of the Justs.*, 47 So. 2d 714, 716 (Ala. 1950) ("[O]nly one apportionment is contemplated during the ten-year period that a given census enumeration is in effect.").

At most, the Special Session could seek to reinstate the prior Senate map it enacted in 2021, but that legislative action would be wholly redundant. The district court "enjoin[ed] Secretary Allen and his successors in office from conducting any Senate elections according to . . . the plan the Alabama Legislature enacted in 2021," Dkt. 65-3 at ii & iv, and instead "ordered [the Secretary] to administer Alabama's 2026 and 2030 state Senate elections" according to the court-approved Remedial Plan, Dkt. 65-4 at 29; *see also* Appellant's Br., Dkt. 65-1 at 3–4 (describing injunctions). Thus, if the Secretary were to succeed in vacating the district court's injunctions, the result would be reinstating the Legislature's 2021 Plan without any legislative action.

The "necessity" of the Legislature sanctioning a do-over primary—with the resultant repercussions for voters and election officials—is not tethered to the timing of this special session. The Secretary has declared that the ongoing primary will continue as scheduled.[1] Voting is already underway. To hold the 2026 elections under different maps, the Governor would need to void valid votes in an ongoing election and call a special election regardless of when any vacatur occurred. This underscores the lack of exigency and counsels in favor of a more reasoned approach.

---

[1] *Secretary of State Wes Allen: "May 19 Primary Election to Proceed as Planned,"* Ala. Sec. of State (May 4, 2026), https://www.sos.alabama.gov/newsroom/secretary-state-wes-allen-may-19-primary-election-proceed-planned.

**II. Defendants Have Not Made a Sufficient Showing to Require Emergency Vacatur or a Stay, and the Evidence Merits Full Briefing After *Callais*.**

**A. Based on the Court's findings from trial, Defendants have not shown a high likelihood of reversal under the *Callais* standard that justifies a stay or immediate vacatur.**

Even under the *Callais* standard, this Court is likely to affirm the district court's thorough decision. In *Callais*, the Supreme Court repeatedly emphasized that it "ha[d] not overruled" *Allen v. Milligan*, 599 U.S. 1, 23 (2023), where the Court recently affirmed a finding that Alabama likely violated Section 2 of the Voting Rights Act. Here, "the plaintiffs and the State presented much of the same evidence that was presented in [Milligan], including ten of the same expert witnesses who opined on overlapping issues." *Ala. NAACP I*, 796 F. Supp. 3d at 776. As further explained below, this case shares much of the evidence that the Supreme Court found sufficient to demonstrate a Section 2 violation in *Allen*, even applying the *Callais* standard.

> *1. Plaintiffs' Illustrative Plan and the Remedial Plan satisfy the* Callais *preconditions and the State's identified redistricting goals.*

In *Callais*, the Court revised the first *Gingles* precondition, which requires plaintiffs to submit illustrative maps with an additional opportunity district. *Callais*, 2026 WL 1153054, at *15. Under the revised standard, (1) "plaintiffs cannot use race as a districting criterion"; and (2) the "illustrative maps must meet all the State's

legitimate districting objectives, including traditional districting criteria and the State's specified political goals." *Id*. The district court already concluded that Plaintiffs satisfy these requirements.

First, the district court properly concluded that Plaintiffs' expert, Mr. Anthony Fairfax, did not improperly use race as a criterion in redistricting. *Ala. NAACP I*, 796 F. Supp. 3d at 770. Indeed, Alabama's own expert never alleged that Mr. Fairfax improperly used race in drawing illustrative District 25. *Id*. at 854. While Mr. Fairfax knew "where the minority community exist[ed]"—as any mapmaker familiar with Alabama would—he did not display or otherwise rely on race in drawing illustrative District 25. *Id*. at 791. A cartographer does not improperly use race where, as here, he "consider[s] the relevant racial data only after he had drawn" a challenged map and he "generate[s] that data solely for a lawful purpose" of checking that the "maps he produced complied with [the Court's] Voting Rights Act precedent." *Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 22 (2024); *see also Callais*, 2026 WL 1153054, at *2 (citing *Alexander* with approval).

Moreover, this Court cannot "shut [its] eyes" to the fact that the district court devised a constitutional race-blind remedy. *See Wright v. Sumter Cnty. Bd. of Elections*, 979 F.3d 1282, 1303 (11th Cir. 2020) (examining a remedial plan to determine whether the plaintiffs satisfied Section 2 of the Voting Rights Act). The

Remedial Plan was drawn by a non-party who "did not display any racial demographic data while he drafted the [Remedial] Plan." *Ala. State Conf. of the NAACP v. Allen* ("*Ala. NAACP II*"), 809 F. Supp. 3d 1366, 1380 (N.D. Ala. 2025). The Special Master also reviewed the Remedial Plan "race-blind." *Id*. at 1373. Thus, the district court rejected Alabama's unsupported claim that the Remedial Plan was "race-predominant even though it was prepared race-blind." *Id*. at 1381.

Second, the Court did not err in concluding that Plaintiffs' illustrative plans satisfied the State's own redistricting criteria. No member of the Legislature asserted any partisan objectives as motivating the district lines in the 2021 Senate Plan, and the legislative redistricting guidelines contained no reference to partisanship. *Ala. NAACP I*, 796 F. Supp. 3d. at 776–78. Here, as in *Milligan*, Alabama leaders expressly disclaimed any partisan motive in drawing the 2021 Senate Plan. The Chair of the Senate's Redistricting Committee, Jim McClendon, who oversaw the enactment of the 2021 Senate Plan, testified that partisanship was not a factor in drawing the Enacted Plan and that the Plan was drawn without even looking at political data. Dist. Ct. Dkt. 235-1 at 28–29. Here, like in *Milligan*, "the State did not defend its map on the ground that it was drawn to achieve a political objective." *Callais*, 2026 WL 1153054, at *18. Plaintiffs therefore had no duty to meet goals that Alabama itself never tried to advance. Rather, Mr. Fairfax closely followed the

11

State's redistricting criteria when drawing Plaintiffs' illustrative plans. *Ala. NAACP I*, 796 F. Supp. 3d at 853–54. No party has provided evidence otherwise.

The Remedial Plan also meets "all of the State's legitimate districting objectives, including traditional districting criteria and the State's specified political goals." *Callais*, 2026 WL 1153054, at *15. The Remedial Plan was "closest to the [Enacted] Plan, limiting its modifications to . . . only two districts." *Ala. NAACP II*, 809 F. Supp. 3d at 1375. It has the same compactness scores as the Enacted Plan, and splits three fewer municipalities statewide. *Id*. at 1375.

While Alabama never asserted a partisan goal, the Remedial Plan also is likely to maintain the partisan makeup of the Senate. Under the Remedial Plan, a Republican candidate is more likely than a Democratic one to win elections in District 26. *See id*. at 1375 (noting that "a Black-preferred [Democrat] wins approximately 47% of the nineteen elections studied"). Indeed, according to Plaintiffs' own analysis, Democrats have completely failed to win in any recent elections for District 26 under the Remedial Plan. *Id*. at 1377.

Thus, the Court had every basis to conclude that Plaintiffs' illustrative plans and the Remedial Plan met all the State's "legitimate redistricting objectives." *Callais*, 2026 WL 1153054, at *15.

*2. Consistent with* Callais*, the district court found that race, rather than party, drives racially polarized voting in Alabama.*

*Callais* requires that plaintiffs "disentangle" race and political affiliation in analyzing voting patterns. 2026 WL 1153054, at \*15. Here, the district court found that Plaintiffs showed that race, more than partisan politics, drives polarization in Alabama. *Ala. NAACP I*, 796 F. Supp. 3d at 861–65.

First, the Court accepted Plaintiffs' evidence showing that racial polarization cannot be explained by party preference. The Court declined to find that White Republican voters were willing to support Black Republicans, particularly in Montgomery. *Ala. NAACP I*, 796 F. Supp. 3d at 863. In examining two 2024 Republican primary races in the Montgomery area, the Court found that White voters overwhelmingly supported White Republicans over Black Republicans. *Id*. For example, in the 2024 Republican primary in Congressional District 2, four Black candidates finished behind the four White candidates, with the four Black candidates "together receiv[ing] only 6.2% of the total vote." *Id*. The Court also accepted that "several stipulated facts are to the same effect," where Black Republicans lost primaries for Congressional District 3, State House District 27, and the 2022 U.S. Senate, with the Black candidates garnering only between 0.9% and 8.7% of votes. *Id*. Thus, the Court found "that White Republicans are not willing to support

13

minority [Republican] candidates in large numbers." *Id*. The Court also had before it evidence from nonpartisan mayoral elections where, even in the absence of party labels, Black voters and White voters still voted along racial lines. *See id*. at 808.

Second, the Court also found that the political parties' positions on key issues like abortion and same-sex marriage did not explain the voting patterns of Black voters. Rather, Black voters and White voters in Alabama both oppose same-sex marriage and abortion in roughly equal numbers, but these shared political positions are not reflected in their voting patterns. *Id*. at 863–64. Unlike in *Callais*, 2026 WL 1153054, at *17, the evidence here showed that even where party was held constant, the pattern of racial polarization persisted between Black and White voters in the enjoined areas of Alabama's 2021 Senate Plan.

Third, the district court found the Secretary's experts on electoral politics, Dr. Hood and Dr. Bonneau, of limited value because they both drew broad conclusions from "very limited atypical data," *Id*. at 859, 861, and their opinions contradicted election results in Alabama. *Id*. at 859.

### 3. *Plaintiffs provided ample evidence of present-day intentional discrimination in Alabama, including regarding voting.*

In *Callais*, the Supreme Court faulted the *Robinson* court for failing to consider that none the evidence it cited "showed even a plausible likelihood of

14

intentional discrimination," *Callais*, 2026 WL 1153054, at *17, and that it focused on much older evidence of intentional discrimination by Louisiana officials rather than focusing on current conditions. *Id*. at *16. Here, Plaintiffs' evidence provides much "more than a remote bearing" on "present-day intentional racial discrimination regarding voting." *Id*.

For example, the Court relied upon the fact that in the past twelve years, multiple political subdivisions in Alabama were bailed back into preclearance review under Section 3(c) of the Voting Rights Act based on intentionally discriminatory voting practices. *See Ala. NAACP I*, 796 F. Supp. 3d at 868. It also cited *United States v. McGregor*, 824 F. Supp. 2d 1339, 1345–47 (M.D. Ala. 2011), where a federal court found that Alabama State Senators conspired to depress Black voter turnout by keeping a referendum issue popular among Black voters (whom the Senators called "Aborigines") off the ballot. *Id*. at 869. And it noted that after the 2010 Census, Black voters and legislators successfully challenged twelve state legislative districts as unconstitutional racial gerrymanders. *Id*. The Court found both "a pervasive and protracted history of official discrimination in voting rights in Alabama," and that this pattern "has run well into the present era: several of the decisions recited above were issued in the last ten years and by federal judges who remain in service today." *Id*. There were also direct examples from just the last few

years, such as testimony that, unlike Black representatives, White representatives had not attended NAACP events to discuss issues relating to the expansion of Medicaid and access to health care for Black Alabamians, *id.* at 165, and that the only elected officials who have met with the NAACP about civil rights issues are Black Representatives, *id.* at 180.

The Secretary has not made a strong showing that he would now prevail on the merits under *Callais*, making an emergency stay or vacatur improper.

**B. Plaintiffs and their members will face irreparable harm if the motion is granted, and the public interest and equities weigh against it.**

The Secretary also bears the burden to show, among other things, that he "will be irreparably injured absent a stay," and that a stay will not "substantially injure the other parties interested in the proceeding." *Swain v. Junior*, 958 F.3d 1081, 1088 (11th Cir. 2020) (citing *Nken v. Holder*, 556 U.S. 418, 426 (2009)). He cannot meet this burden, nor justify inflicting irreparable injuries on Plaintiffs.

First, the Secretary has not shown the irreparable harm required for emergency equitable relief. Instead, the Secretary's own motion confirms the speculative nature of his alleged harm. The Governor called a special session merely "to consider legislation" for a special primary *if* district lines are altered, making that special session irrelevant to the proceedings here. Appellant's Br., Dkt. 65-1 at 3;

16

*see also id*. at 15 ("[i]t remains to be seen what the Alabama Legislature will do during its special session"). That concession defeats any claim of even concrete harm, let alone imminent irreparable injury. *See Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) ("[T]he asserted irreparable injury must be neither remote nor speculative, but actual and imminent.") (citation omitted).

By contrast, Plaintiffs and voters face concrete and irreparable injuries if the injunction is vacated or stayed. Any loss of constitutional rights is presumed an irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Impairments of fundamental voting rights are irreparable injuries. *See Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1352 (11th Cir. 2005); *see also Democratic Exec. Comm. of Fla.*, 915 F.3d at 1327. The right to vote includes the right to cast an effective ballot that is counted in the election in which it is lawfully submitted. *See United States v. Classic*, 313 U.S. 299, 315 (1941). Yet thousands of Alabama voters, including some of Plaintiffs' members, have already cast their absentee ballots and will face irreparable harm by not having their votes counted if the Secretary's requested relief is granted. *See Roe*, 43 F.3d at 580 (recognizing due process violations where election officials changed absentee-ballot rules after ballots had been cast). This loss of voting rights in an election cannot be remedied after the fact. *See League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224,

17

247 (4th Cir. 2014) ("[O]nce the election occurs, there can be no do-over and no redress.")

The public interest and balance of equities weigh heavily against emergency relief because of the confusion, uncertainty, and likely constitutional violations that it would inject into an active election. This would undermine "[c]onfidence in the integrity of our electoral processes," which "is essential to the functioning of our participatory democracy." *Purcell*, 549 U.S. at 4. The State has no interest in conducting an election under circumstances that result in mass voter confusion and diminished turnout, based on a rushed consideration of a multi-thousand-page trial record and several-hundred-page opinion in three days.

By contrast, denying emergency relief would preserve the current maps for the ongoing 2026 elections while allowing the parties and the courts to address *Callais* through orderly appellate proceedings. The public interest is not served by changing district lines and election rules after voting has begun; it is served by ensuring that voters may cast effective ballots under clear, settled rules. *See Charles H. Wesley Educ. Found.*, 408 F.3d at 1355 (preserving "franchise-related rights is without question in the public interest").

Defendants have not shown a high likelihood of reversal and the equities weigh against such relief, so they have not met their burden for emergency relief.

18

**III. The Secretary Has Not Justified Departing from the Normal Course of Briefing and Argument, and His Request for a Stay Is Improper and Should Have Been Brought First in the District Court.**

Because Defendants *have not* shown a high-likelihood of reversal under the *Callais* standard, *see supra* at § II.A, and Plaintiffs *have* shown that they will suffer irreparable injury to their constitutional rights if injunction is stayed or vacated, *see supra* at § II.B, the Court should proceed with briefing in the normal course. Defendants' sole cited authority for vacatur and remand, *Thomas v. Attorney General, Florida,* 795 F.3d 1291 (11th Cir. 2015), does not suggest otherwise. The Secretary does not meet his burden for a stay, and his request in this Court first violates the Rules of Appellate Procedure and should be denied for that reason alone.

First, in *Thomas*—unlike this case—vacatur was necessary to restore the district court's jurisdiction over the case after the district court initially denied the plaintiff's federal habeas petition as untimely, and, as a result, terminated its jurisdiction over the action. *Id.* at 1287–89. However, after the district court "issued its order, subsequent cases in the Supreme Court and [the Eleventh Circuit] substantially altered the landscape of equitable tolling . . ." *Id.* at 1291. Thus, the panel vacated the court's order dismissing the habeas petition and remanded on the limited issue of equitable tolling so that the court could "make additional findings of fact[,]" *id.* at 1287, and "apply these findings of fact to the changing landscape in

the law of equitable tolling. . ." *Id*. at 1287, 1297 n.3; *see also id*. at 1297 (noting the remand "impl[ies] no view on" the ultimate legal question, and "leav[ing] that question . . . to the district court in the first instance"). Doing so did nothing to alter the status quo, instead presenting a pure legal issue for limited reconsideration.

Second, Rule 8(a)(1) of the Federal Rules of Appellate Procedure requires that a party seeking a stay pending appeal "must ordinarily move first in the district court." Fed. R. App. P. 8(a)(1). A party is excused from doing so only if it "show[s] that moving first in the district court would be impracticable[.]" Fed. R. App. P. 8(a)(2)(A)(i). This is because "the district court should have the opportunity to rule on the reasons and evidence presented in support of a stay, unless it clearly appears that further arguments in support of the stay would be pointless in the district court." *Ruiz v. Estelle*, 650 F.2d 555, 567 (5th Cir. 1981) (noting that "some of these matters [presented in support of the stay] were not presented to the district judge and should be so considered by him prior to any action by this court").

It is "the province of the trial court" to first assess the evidence it heard at trial and then provide this Court its position on the movant's likelihood of success. *Garcia-Mir*, 781 F.2d at 1453. Asking this Court to do so first, in the absence of an emergency, deprives this Court of the benefit of the district court's analysis.

## CONCLUSION

For the foregoing reasons, the Secretary meets none of the requirements for a stay pending appeal and his motion should be denied.

DATED this 6th day of May 2026.

Deuel Ross
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th Street N.W. Ste. 600
Washington, DC 20005
(202) 682-1300
dross@naacpldf.org

Stuart Naifeh
Kathryn Sadasivan
Brittany Carter
Colin Burke
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
 (212) 965-2200
snaifeh@naacpldf.org
ksadasivan@naacpldf.org
bcarter@naacpldf.org
cburke@naacpldf.org

Alison Mollman
AMERICAN CIVIL LIBERTIES UNION
OF ALABAMA
P.O. Box 6179
Montgomery, AL 36106-0179
(334) 265-2754
amollman@aclualabama.org

Respectfully submitted,

*/s/ Davin M. Rosborough*
Davin M. Rosborough
Dayton Campbell-Harris
Theresa J. Lee
Sophia Lin Lakin
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St.
New York, NY 10004
 (212) 549-2500
drosborough@aclu.org
dcampbell-harris@aclu.org
tlee@aclu.org
slakin@aclu.org

Jacob Van Leer
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th St. NW
Washington, DC 20005
jvanleer@aclu.org

Bradley E. Heard
Jack Genberg
SOUTHERN POVERTY LAW CENTER
1101 17th Street NW, Suite 550
Washington, DC 20036
(240) 890-1735
bradley.heard@splcenter.org
jack.genberg@splcenter.org

David Dunn
HOGAN LOVELLS LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3000
david.dunn@hoganlovells.com

Jessica L. Ellsworth
Jo-Ann Tamila Sagar
HOGAN LOVELLS LLP
555 Thirteenth Street, NW
Washington, DC 20004
(202) 637-5600
jessica.ellsworth@hoganlovells.com

*Attorneys for Plaintiffs-Appellees*

**CERTIFICATE OF COMPLIANCE**

This document complies with the word limit of Fed. R. App. P.32, because, excluding the parts of the document exempted by Fed. R. App. P.32(f), this document contains 4,763 words including all headings, footnotes, and quotations, and excluding the parts of the brief exempted under Fed. R. App. P. 32(f). This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.

Dated: May 6, 2026

Respectfully submitted,

/s/ *Davin M. Rosborough*
*Counsel for Plaintiffs-Appellees*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2026, I filed the foregoing Opposition using the Court's CM/ECF system, which will serve counsel for all parties.

/s/ *Davin M. Rosborough*
Davin M. Rosborough
*Counsel for Plaintiffs-Appellees*