Nos. 25-13007, 25-14131

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

◆

ALABAMA STATE CONFERENCE OF THE NAACP, et al.,
*Plaintiffs-Appellees*,

v.

SECRETARY OF STATE FOR THE STATE OF ALABAMA,
*Defendant-Appellant*.

◆

On Appeal from the United States District Court
for the Northern District of Alabama
Case No. 2:21-cv-1531

## SECRETARY OF STATE'S REPLY IN SUPPORT OF MOTION TO VACATE INJUNCTIONS IN LIGHT OF *LOUISIANA V. CALLAIS* AND FOR THE IMMEDIATE ISSUANCE OF THE MANDATE, OR, IN THE ALTERNATIVE, TO STAY THE INJUNCTIONS
### (Relief Requested by May 8, 2026)

Michael P. Taunton
Riley Kate Lancaster
BALCH & BINGHAM LLP
1901 Sixth Avenue North
Suite 1500
Birmingham, Alabama 35203
Telephone (205) 251-8100
MTaunton@Balch.com

Steve Marshall
 *Attorney General*
A. Barrett Bowdre
 *Solicitor General*
Robert M. Overing
 *Principal Deputy*
 *Solicitor General*
James W. Davis
 *Deputy Attorney General*

STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Ave.
Montgomery, AL 36104
(334) 242-7300
Barrett.Bowdre@AlabamaAG.gov

*Counsel for Secretary of State*
*Wes Allen*

*Ala. State Conf. of NAACP v. Sec'y of State of Ala.*, Nos. 25-13007 & 25-14131

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1(a)(3) and 26.1-2(b), undersigned counsel certifies that the following listed persons and parties may have an interest in the outcome of this case:

1.    ACLU of Alabama

2.    Aden, Leah C.

3.    Alabama Attorney General's Office

4.    Alabama State Conference of the NAACP

5.    Allen, Amanda N.

6.    Allen, Hon. Wes

7.    American Civil Liberties Union

8.    American Civil Liberties Union Foundation

9.    Ashton, Anthony

10.    Balch & Bingham LLP

11.    Barnes, Anna-Kathryn

12.    Bowdre, A. Barrett

13.    Burke, Colin

14.    Burrell, Ashley

15.    Campbell-Harris, Dayton

16.    Carter, Brittany

*Ala. State Conf. of NAACP v. Sec'y of State of Ala.*, Nos. 25-13007 & 25-14131

17.    Chandler, Laquisha

18.    Davis, James W.

19.    Douglas, Scott

20.    Duggan, Matthew R.

21.    Dunn, David

22.    Ebenstein, Julie A.

23.    Ellsworth, Jessica L.

24.    Ettinger, James W.

25.    Faulks, LaTisha Gotell

26.    Gbe, Harmony R.

27.    Geiger, Soren A.

28.    Genberg, Jack

29.    Greater Birmingham Ministries

30.    Harris, A. Reid

31.    Hattix, Laurel Ann

32.    Heard, Bradley E.

33.    Hogan Lovells US LLP

34.    Jackson, Sidney

35.    LaCour Jr., Hon. Edmund G.

36.    Lakin, Sophia Lin

*Ala. State Conf. of NAACP v. Sec'y of State of Ala.*, Nos. 25-13007 & 25-14131

37.    Lancaster, Riley K.

38.    Lawsen, Nicki

39.    Lee, Theresa J.

40.    Livingston, Sen. Steve

41.    Manasco, Hon. Anna M.

42.    Marshall, Hon. Steve

43.    Mauldin, Dylan L.

44.    Maze, Hon. Corey L.

45.    McClendon, (former) Sen. Jim

46.    McKay, Charles A.

47.    Merrill, Hon. John H.

48.    Messick, Misty S. Fairbanks

49.    Milligan, Evan

50.    Mink, Richard D.

51.    Mollman, Alison

52.    NAACP Legal Defense and Educational Fund, Inc.

53.    NAACP Legal Defense Fund

54.    Naifeh, Stuart

55.    National Association for the Advancement of Colored People

56.    Newsom, Hon. Kevin C.

*Ala. State Conf. of NAACP v. Sec'y of State of Ala.*, Nos. 25-13007 & 25-14131

57.   Olofin, Victor

58.   Overing, Robert M.

59.   Pringle, Rep. Chris

60.   Rosborough, Davin

61.   Ross, Deuel

62.   Sadasivan, Kathryn

63.   Seiss, Benjamin M.

64.   Shapiro, Avner

65.   Short, Caren E.

66.   Simelton, Benard

67.   Smith, Brenton M.

68.   Southern Poverty Law Center

69.   Stewart, Shelita M.

70.   Stone, Khadidah

71.   Taunton, Michael P.

72.   Thomas, James

73.   Thompson, Blayne R.

74.   Turrill, Michael

75.   Unger, Jess

76.   van Leer, Jacob

*Ala. State Conf. of NAACP v. Sec'y of State of Ala.*, Nos. 25-13007 & 25-14131

77.    Walker, J. Dorman

78.    Wallace, Janette McCarthy

79.    Weisberg, Liza

80.    Welborn, Kaitlin

81.    Wiggins, Childs, Pantazis, Fisher & Goldfarb, LLC

82.    Wilson, Thomas A.

83.    Woodard, J. Scott

No publicly traded company or corporation has an interest in the outcome of the case or appeal

Respectfully submitted this 7th day of May, 2026.

s/ A. Barrett Bowdre
A. Barrett Bowdre
*Counsel for Secretary of State Wes Allen*

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS .................................................... C-1

TABLE OF CONTENTS ..................................................................................... i

TABLE OF AUTHORITIES ............................................................................... ii

REPLY ................................................................................................................ 1

    I.    The Court Should Vacate And Remand Or Grant A Stay Because The District Court's Injunctions Cannot Survive *Callais*. ..................................................................... 3

        A.    First *Gingles* Precondition. ........................................... 3

        B.    Second and Third *Gingles* Preconditions................................. 5

        C.    Totality of Circumstances ........................................... 6

    II.    Alternatively, The Court Should Grant A Stay To Prevent Irreparable Harm. ................................................. 8

CONCLUSION ................................................................................................ 10

CERTIFICATE OF COMPLIANCE................................................................ 12

CERTIFICATE OF SERVICE ........................................................................ 13

i

## TABLE OF AUTHORITIES

**Cases**

*Abbott v. LULAC*,
  146 S. Ct. 418 (2025) ..............................................................................2

*ALBC v. Alabama*,
  231 F. Supp. 3d 1026 (M.D. Ala. 2017) ...............................................7

*ALBC v. Alabama*,
  575 U.S. 254 (2015) ...............................................................................8

*Callahan v. U.S. Dep't of Health & Hum. Servs.*,
  939 F.3d 1251 (11th Cir. 2019) ............................................................8

*Democratic Nat'l Comm. v. Wis. State Legislature*,
  141 S. Ct. 28 (2020) ..............................................................................9

*Gardner v. Henderson*,
  No. 2:26-CV-00084-RJS-JCB, 2026 WL 496448 (D. Utah Feb. 23, 2026) .........9

*Louisiana v. Callais*,
  Nos. 24-109 & 24-110 (U.S. Apr. 29, 2026) ............... i, 1, 2, 3, 4, 5, 6, 7, 8, 9, 10

*Malliotakis v. Williams*,
  146 S. Ct. 809 (2026) .............................................................................2

*Merrill v. Milligan*,
  142 S. Ct. 879 (2022) .............................................................................8

*Purcell v. Gonzalez*,
  549 U.S. 1 (2006) ........................................................................ 2, 8, 10

*RNC v. DNC*,
  589 U.S. 423 (2020) ...............................................................................2

*Sw. Voter Registration Educ. Project v. Shelly*,
  344 F.3d 914 (9th Cir. 2003) .................................................................8

*Thomas v. Att'y Gen.*,
  795 F.3d 1286 (11th Cir. 2015) .............................................................1

*Thornburg v. Gingles*,
   478 U.S. 30 (1986)................................................................... 1, 3, 5, 6

*Trump v. CASA, Inc.*,
   606 U.S. 831 (2025).......................................................................2

*United States v. Pickett*,
   916 F.3d 960 (11th Cir. 2019) ...............................................8

*United States v. Savarese*,
   842 F. App'x 448 (11th Cir. 2021) ...............................................1, 3

**Rules**

Fed. R. App. P. 8(a)(2)(A)(i) ......................................................10

**REPLY**

*Louisiana v. Callais* fundamentally altered the law that governs §2 cases—so much so that an injunction against Louisiana's 2022 map and affirmed by the Fifth Circuit in 2023 had become "easily" wrong under "the updated *Gingles* framework." Slip Op. 33. *Callais* addressed issues that Alabama has raised in this litigation but had "never [been] decided" until now. *Id.* at 9. "In light of [ ] significant developments" guiding the interpretation of "§2 and constitutional principles," the Supreme Court updated *every element* of the *Gingles* test. *Id.* at 29-31. If there were ever a case to vacate and remand after an intervening change in controlling law, this is it.

Plaintiffs misconstrue the nature of the request. The Secretary has not asked the Court to "disrupt[] a state's voting rules close to an election." Resp.3. The Secretary has asked the Court *not* to "decide in the first instance how [*Callais*] applies," *United States v. Savarese*, 842 F. App'x 448, 452 (11th Cir. 2021), because this is "a court of review, not first view," *id.* at 452 (Brasher, J., concurring). The Court can vacate and remand without directing the district court "to reach any particular outcome," *id.* at 453, without opining on the merits, and without weighing any equities. All the Court must find is that *Callais* "chang[ed] [the] landscape." *Thomas v. Att'y Gen.*, 795 F.3d 1286, 1287 (11th Cir. 2015) (vacating and remanding *sua sponte* to apply new law). It did, so vacatur is appropriate.

The Secretary has asked for equitable relief only as an alternative. To that request, Plaintiffs cling to *Purcell*—complaining that it is too late for "judicial intervention." Resp.4. But *Purcell* is a federalism principle that recognizes the critical difference between judicial action *enjoining* the enforcement of state law and judicial action *permitting* it. While *Purcell* "may counsel against the issuance of an injunction … shortly before an election," it "does not counsel against a stay" (let alone vacatur) to prevent an election from being "tainted" by "likely" improper judicial intervention. *Malliotakis v. Williams*, 146 S. Ct. 809, 811 (2026) (Alito, J., concurring in grant of stay). The district court's injunctions—prohibiting Alabama's enacted Senate map and requiring a court-ordered one—will more than "likely" be vacated and revisited in light of *Callais*. Thus, Alabama asks not for the "federal courts" to "alter the election rules on the eve of an election," *RNC v. DNC*, 589 U.S. 423, 424 (2020), but to restore the proper "federal-state balance in elections" that existed *before* the federal court altered the election rules under a now-moribund legal framework, *Abbott v. LULAC*, 146 S. Ct. 418, 419 (2025). The equities here are not those that motivated *Purcell*.

Plaintiffs spend much of their brief trying to explain how their claims might ultimately survive *Callais*. But whether the Secretary, "at the end of the day, will prevail on the underlying merits … is not how the *Nken* factors work." *Trump v. CASA, Inc.*, 606 U.S. 831, 860 (2025). If the Court decides the alternative request

2

for a stay, it must ask whether the Secretary is "likely to prevail on the merits of the issue before [the Court], not whether he is likely to prevail on the merits of the underlying suit." *Id.* The issue before the Court is whether the injunctions are likely to be vacated and the case remanded in light of *Callais*, and the answer is yes. And even if the Court reaches the Secretary's likelihood of success in the underlying suit, it should hold that under the "updated" *Gingles* framework, Plaintiffs are unlikely to succeed in their §2 claim relying on this record and an opinion that all agree applied the wrong standard. The injunctions should be immediately vacated or stayed.

**I.    The Court Should Vacate And Remand Or Grant A Stay Because The District Court's Injunctions Cannot Survive *Callais*.**

Plaintiffs hardly dispute that *Callais* has brought a sea change to the law of redistricting. Every step of the district court's reasoning must be revisited under the "updated" framework because the old way of doing things ran afoul of "the text of §2 and constitutional principles." *Callais*.Op.29. "Because of the Supreme Court, we now know that the district court was wrong," so "a remand is the most prudent course of action." *Savarese*, 842 F. App'x at 452 (Brasher, J., concurring).

**A.    First *Gingles* Precondition.**

**1.** *Callais* requires a map that "achieves *all* the State's objectives … *at least as well* as the State's map." *Callais*.Op.25. But here, the district court blessed maps that made "tradeoffs" and "balance[d]" districting criteria, Op.173, so it did not "already conclude[ ] that Plaintiffs satisfy [*Callais*'s] requirements," Resp.10.

3

Plaintiffs fixate on partisanship, *id.* at 11-12, but their maps "must meet *all* the State's legitimate districting objectives," *Callais*.Op.29. Their maps did not. To take one example, their map "created a new city split in Prattville in Senate District 26," Op.174, which the State opposed, DE251 ¶153. For another, what the district court credited as a "logical choice" by their expert Dr. Fairfax, Op.175, the State opposed because he subordinated "communities of interest" by connecting "isolated rural black populations throughout the countryside that have little, if anything, in common with the urban Montgomery population," *id.* at ¶¶154-56; *see* DE235-1:34. For a third, the Legislature tried to protect incumbents and their districts, *see* Op.18, so that voters are "familiar with those people running for office," DE235-1:35; *see id.* at 23, 31-32, 34-35; DE235-2:33. Plaintiffs did not.

Plaintiffs respond that their map is compact overall, that it does not split *other* cities elsewhere in the State, and that Democrats may not win the court-ordered District 26. *See* Resp.12. These may have been colorable arguments before *Callais*, but after *Callais*, Plaintiffs do not "meet their burden" unless they "provide an illustrative map that met all the State's nonracial goals." *Callais*.Op.33. The district court did not find that Plaintiffs did that because it instead allowed "trade-offs of those principles that [it thought were] permitted." Op.176.

**2.** Plaintiffs offered maps that did not use "race as much" as other criteria, Op.173—but *Callais* prohibits a "map in which race was used" at all, *Callais*.Op.29.

4

Plaintiffs respond that their expert "did not improperly use race." Resp.10. But what is "improper" has changed. Whether it could be considered "race-blind" before *Callais* (Resp.11) to be "review[ing] race at the beginning" and "periodically" during mapmaking, Op.173, the new rule is that "an illustrative map in which race was used has no value," *Callais*.Op.29. Plaintiffs also aimed to draw a new majority-black district "without eliminating any of the [ ] existing" ones, DE251:43 (quoting PX6 ¶55), which improperly made "race [ ] a districting criterion." *Callais*.Op.29.

The district court found that Dr. Fairfax used race "to the degree the law allows" (Op.174) and sacrificed the State's goals to the extent "permitted" (Op.176), but what *Callais* allows and permits is much different. The Court applied the wrong legal standard, so those findings cannot sustain its judgment.

## B.    Second and Third *Gingles* Preconditions

At *Gingles* 2 and 3, the district court held it was "not require[d]" to "disentangle party and race," Op.183, but *Callais* says "disentangling race and politics" is "critical," *Callais*.Op.30. To this, Plaintiffs cherry-pick "two 2024 Republican primary races" to conclude "that White Republicans are not willing to support minority Republican candidates." Resp.13-14 (brackets omitted). But simply pointing to the race of candidates in *two* elections—especially without controlling for other variables like funding or name recognition—proves little about whether race drives political outcomes. Plaintiffs likewise cherry-pick two issues on which they believe

black and white voters "roughly" agree—abortion and same-sex marriage. Resp.14. But controlling for *two* political issues is not the same as controlling for partisan affiliation. It also does little to raise "a strong inference of racial discrimination." *Callais*.Op.35.

In any event, Plaintiffs do not contest that the district court applied the wrong test. It *expressly declined* to disentangle party and race for *Gingles* purposes, Op.183, and at the totality-of-circumstances stage, it adopted the view "that race plays a key role in party attachments" in part for "legal" reasons that *Callais* abrogated, Op.201; *accord Callais*.Op.34 ("[T]hat issues discussed by [the Democratic] party appealed to black voters … should have undercut, not strengthened, any showing of intentional racial discrimination because race and politics are so intertwined."). The district court also seemed to put the burden *on the State* to present "evidence that only party politics are at work," Op.194, but *Callais* makes that clear that "*plaintiffs* must provide an analysis that controls for party affiliation," *Callais*.Op.30 (emphasis added).

### C.    Totality of Circumstances

At the totality-of-circumstances stage, the district court "emphatically" relied on "past discrimination," Op.210, and the Senate Factors, Op.184-221, but the "inquiry must focus" on "present-day intentional racial discrimination regarding

voting," *Callais*.Op.30, rather than "jump[ing] right to the Senate Judiciary Committee Report," *id.* at 7.

Plaintiffs insist that the district court made the requisite findings—even if it applied the wrong standard. But as in *Callais*, where the district court erroneously relied on "decades-old problems" and "sordid history," *Callais*.Op.34, the court here justified its injunction with history from the "late 1880s" to desegregation, Op.206-208. And worse than *Callais*, where the district court "cast aside as 'irrelevant' the lack of evidence that black voters had faced intentional discrimination in recent years," *Callais*.Op.34-35, the court here "refuse[d]" to credit evidence of equal access to the political process on the ground that it would somehow "give punitive effect to the political participation of Black Alabamians," Op.210.

Plaintiffs cite the same kind of "evidence" that *Callais* held (at 34-35) did not create "even a plausible likelihood of intentional discrimination by the State." *Compare* Resp.14-16 *with* Supp. Br. for Robinson Appellants 46-47, *Callais*, No. 24-109 (U.S. Aug. 27, 2025). Plaintiffs cite *ALBC v. Alabama*, where there was no finding of intentional discrimination, and Alabama was trying to *comply* with the VRA by not "retrogressing the ability of black voters to elect candidates of their choices." 231 F. Supp. 3d 1026, 1032-34 (M.D. Ala. 2017). Otherwise, Plaintiffs have a few examples of voting cases against localities, the remark of a former legislator fifteen years ago, and the fact that mostly Democrats attend NAACP events. Resp.15-16.

They did not come "close to showing an objective likelihood that the State's challenged map was the result of intentional discrimination." *Callais*.Op.35.

*    *    *

Because "the parties had no occasion" to address *Callais* in the district court, *United States v. Pickett*, 916 F.3d 960, 967 (11th Cir. 2019), the Court should vacate and remand for that Court to consider this lawsuit "under the revised standard," Resp.2. *Cf. ALBC v. Alabama*, 575 U.S. 254, 273-75 (2015) (remanding where conclusions "might well have been different" but for "contrary view of the law"); *Callahan v. U.S. Dep't of Health & Hum. Servs.*, 939 F.3d 1251, 1265 (11th Cir. 2019).

## II.   Alternatively, The Court Should Grant A Stay To Prevent Irreparable Harm.

In the alternative, the Court should stay the injunctions because the Secretary has shown that he is likely to succeed on the question before the Court—whether to vacate and remand in light of *Callais*—and the equities demand it. *No court* has found that Plaintiffs have or could meet their burden under *Callais*, and thus no court has found that it is likely that Alabama's 2021 Senate Plan violates §2 under the proper standard. Yet Alabama remains enjoined.

Plaintiffs seek to defend the upside-down by citing the *Purcell* principle—the rule that *courts* should not "enjoin an impending election" at the last minute. Resp.4 (quoting *Sw. Voter Registration Educ. Project v. Shelly*, 344 F.3d 914, 918 (9th Cir. 2003)); *see Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J.,

8

concurring) (collecting cases). But "*Purcell*, while commonly justified by anti-disruption principles, is also grounded in a federalism principle—protecting states' constitutional interest under the Elections Clause in governing their own elections." *Gardner v. Henderson*, No. 2:26-CV-00084-RJS-JCB, 2026 WL 496448, at *16 (D. Utah Feb. 23, 2026) (3-judge court) (Tymkovich, J., concurring). As Justice Kavanaugh explained in the very opinion Plaintiffs rely on (at 4-5), "[i]t is one thing for a State on its own to toy with its election laws close to a State's elections. But it is quite another thing for a federal court to swoop in and re-do a State's election laws in the period close to an election." *Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring). "The former 'implicate[s] the authority of state courts to apply their own constitutions to election regulations,' but the latter 'involves federal intrusion on state lawmaking processes.'" *Gardner*, 2026 WL 496448, at *16 (quoting *Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28, 28 (2020) (Roberts, C.J., concurring)). This case is the opposite of *Purcell*: the Secretary asks this Court to vacate or stay an injunction, not to impose one.

Plaintiffs pretend such a request is unprecedented (Resp.4), but just look at *Callais*: the plaintiffs there asked the Supreme Court to expedite its judgment because Louisiana's primary election was set to "be held on May 16, 2026," and the Legislature was "considering pushing back" the election to allow for a new map consistent with the Court's opinion. *See* Application, *Callais v. Louisiana*, No.

9

25A1197 (U.S. Apr. 29, 2026). The *Robinson* appellants—represented by many of the same attorneys as plaintiffs here—objected that "many voters across the state have already voted" and that "*Purcell* prevents this sort of late judicial tinkering." *See* Robinson Response (U.S. Apr. 30, 2026). The Supreme Court disagreed: On May 4, it granted the application to expedite the judgment so that Louisiana's election changes could proceed in "an orderly process." Order (U.S. May 4, 2026).

Alabama deserves the same opportunity. While Plaintiffs claim the mantle of the public (Resp.16-18), the public is represented here by state officials who seek the chance to use a map enacted by the people's elected representatives rather than a court-drawn map that, in light of *Callais*, is likely an unconstitutional racial gerrymander. *See Callais*.Op.35.[1]

## CONCLUSION

For these reasons, the Court should (1) vacate the injunctions (DE274 & 322) and immediately issue its mandate or (2) stay the injunctions.

---

[1] Plaintiffs also argue that relief should be denied because the Secretary did not go first to the district court. Resp.19-20. But the Secretary's primary request for relief is one that only this Court can provide: to vacate the injunction and remand in light of *Callais*. The district court cannot do that, and it is something that this Court is likely to do in the normal course; the Secretary simply asks that the Court expedite that process. The Secretary seeks a stay in the alternative—and it conserves judicial resources and prevents confusion for the Secretary to bring that request as an alternative to this Court rather than to seek two separate forms of relief from two separate courts at the same time, particularly given the timeline in which the Secretary needs relief. *See* Fed. R. App. P. 8(a)(2)(A)(i) (noting that a stay motion need not be presented first below when it would be "impracticable" to do so).

Respectfully submitted,

Steve Marshall
 *Alabama Attorney General*

Michael P. Taunton
Riley Kate Lancaster
BALCH & BINGHAM LLP
1901 Sixth Avenue North
Suite 1500
Birmingham, Alabama 35203
Telephone (205) 251-8100
MTaunton@Balch.com

s/ A. Barrett Bowdre
A. Barrett Bowdre
*Solicitor General*

Robert M. Overing
*Principal Deputy Solicitor General*

James W. Davis
*Deputy Attorney General*

STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36104
Telephone: (334) 242-7300
Fax: (334) 353-8400
Barrett.Bowdre@AlabamaAG.gov

*Counsel for Secretary of State Wes Allen*

MAY 7, 2026

11

## CERTIFICATE OF COMPLIANCE

1.    I certify that this motion complies with the type-volume limitations in Rule 27(d)(2)(A). It contains 2,512 words, including all headings, footnotes, and quotations, and excluding the parts of the motion exempted under Rule 32(f).

2.    In addition, this motion complies with the typeface and type style requirements of Rule 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.

s/ A. Barrett Bowdre
A. Barrett Bowdre
*Counsel for Secretary of State Wes Allen*

12

**CERTIFICATE OF SERVICE**

I certify that on May 7, 2026, I electronically filed this document using the Court's CM/ECF system, which will serve counsel of record.

s/ A. Barrett Bowdre

A. Barrett Bowdre

*Counsel for Secretary of State Wes Allen*
