# In the
# United States Court of Appeals
## For the Eleventh Circuit

————————————————

No. 25-13007

————————————————

ALABAMA STATE CONFERENCE OF THE NAACP,
GREATER BIRMINGHAM MINISTRIES,
EVAN MILLIGAN,

*Plaintiffs-Appellees,*

LAQUISHA CHANDLER, et al.,

*Plaintiffs,*

*versus*

SECRETARY OF STATE FOR THE STATE OF ALABAMA,

*Defendant-Appellant,*

STEVE LIVINGSTON,
in his official capacity as Co Chair of the Alabama Permanent
Legislative Committee on Reapportionment et al.,

*Defendants.*

————————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:21-cv-01531-AMM

————————————————

2                    Order of the Court                    25-13007

_____

No. 25-14131
_____

ALABAMA STATE CONFERENCE OF THE NAACP,
GREATER BIRMINGHAM MINISTRIES,
EVAN MILLIGAN,

*Plaintiffs-Appellees,*

LAQUISHA CHANDLER, et al.,

*Plaintiffs,*

*versus*

SECRETARY OF STATE FOR THE STATE OF ALABAMA,

*Defendant-Appellant,*

STEVE LIVINGSTON,

in his official capacity as Co Chair of the Alabama Permanent
Legislative Committee on Reapportionment, et al.,

*Defendants.*

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:21-cv-01531-AMM
_____

Before BRANCH, LUCK, and ABUDU, Circuit Judges.

BY THE COURT:

In 2021, based on new census data, the Alabama legislature redrew the boundary lines for its thirty-five senate districts. In response, the plaintiffs sued to enjoin Wes Allen, the Secretary of

25-13007                    Order of the Court                    3

State of Alabama, from holding elections under the 2021 map because it violated section two of the Voting Rights Act. After trial, the district court found for the plaintiffs and enjoined the secretary "from conducting any [s]enate elections according to the" 2021 map. The district court, instead, imposed its own boundary lines and ordered the secretary to "administer Alabama's upcoming state [s]enate elections using" the new map. That's what the secretary did on May 19, 2026.

The secretary appeals the district court's injunctions. And he applies to stay them pending appeal.

"A court considering whether to issue a stay 'considers four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Swain v. Junior*, 958 F.3d 1081, 1088 (11th Cir. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)). "The first two factors are 'the most critical.'" *Id.* (quoting *Nken*, 556 U.S. at 434). "We address each factor in turn and conclude that a stay is warranted." *Id.*

1. First, the secretary argues that we should vacate the injunctions in light of *Louisiana v. Callais*, 146 S. Ct. 1131 (2026). He's made a strong showing that we should. The Supreme Court, in the last few weeks, has vacated similar district court injunctions and remanded for consideration in light of *Callais*. *See Allen v. Caster*, No. 25-243, 2026 WL 1282800, at *1 (U.S. May 11, 2026) ("The

judgments in No. 25-273 and No. 25-274 are vacated, and the cases are remanded to the United States District Court for the Northern District of Alabama for further consideration in light of *Louisiana* v. *Callais . . . .*"); *Bd. of Election Comm'rs v. NAACP*, No. 25-234, 2026 WL 1377105, at *1 (U.S. May 18, 2026) ("The judgment is vacated, and the case is remanded to the United States District Court for the Southern District of Mississippi for further consideration in light of *Louisiana* v. *Callais . . . .*"); *Turtle Mountain Band v. Howe*, No. 25-253, 2026 WL 1377069, at *1 (U.S. May 18, 2026) ("The petition for a writ of certiorari is granted.  The judgment is vacated, and the case is remanded to the United States Court of Appeals for the Eighth Circuit for further consideration in light of *Louisiana* v. *Callais . . . .*").  If anything, the issues in this case more closely match the issues in *Callais*.  When briefing is done, we will likely do as the Supreme Court has done.

The dissent focuses on whether the secretary has shown a strong likelihood that the 2021 plan violates section two, but this answers the wrong question.  The question for us is not whether the evidence supports the plaintiffs' claim.  We don't look back at the merits of the underlying lawsuit.  Instead, for a stay, we look to whether the party seeking relief will likely succeed in his appeal. *See United States v. Hamilton*, 963 F.2d 322, 323 (11th Cir. 1992) (per curiam) (noting that the party seeking a stay pending appeal must show "a probable likelihood of success on the merits on appeal" (quoting *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986))). Based on the Supreme Court vacating similar injunctions in similar

cases, the secretary will succeed in vacating the injunctions. This factor weighs heavily in favor of a stay.

2. So does the irreparable-harm factor. The district court's injunctions irreparably harm the state because they prohibit it from conducting the senate elections under the 2021 map approved by the people through their elected representatives. As the Supreme Court has explained, "the inability to enforce its duly enacted plans clearly inflicts irreparable harm on the [s]tate." *Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018); *see also Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) ("Any time a [s]tate is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (citation modified)); *Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921, 923 (2024) (Gorsuch, J., concurring in the grant of stay) ("Members of this Court have long held that, any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (citation modified)); *Noem v. Vasquez Perdomo*, 146 S. Ct. 1, 4 (2025) (Kavanaugh, J., concurring in the grant of the application for stay) ("As the Court has indicated, any time that the Government is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (citation modified)).

The dissent contends that the secretary's delay in seeking to stay the injunctions undermines an irreparable-harm finding. But there was no delay. The secretary moved for a stay almost immediately after the district court imposed them. When that motion

6                    Order of the Court                    25-13007

was denied, the secretary almost immediately sought a stay in front of us. After *Callais*, the secretary again moved to stay the injunctions pending appeal. This time, we punted to the district court, which denied relief. The secretary then moved another time for a stay. We're not sure what else the secretary could have done. Certainly, he did more than the moving party in *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244 (11th Cir. 2016). There, the moving party waited five months before seeking any equitable relief from the court. *Id.* at 1248. Here, the secretary sought stay relief no more than a week after the injunctions.[1]

3. Third, staying the injunctions will not substantially injure the plaintiffs because they have not shown they are entitled to the injunctions. The plaintiffs have not shown that they are likely to succeed on their section two claim after *Callais*. At best, they say they "deserve the chance to fully 'address the impact of *Callais*'" before the district court. And the dissent says it is "far from clear" that the district court's conclusions were erroneous under *Callais*. But "far from clear" does not show a substantial injury.[2]

---

[1] The dissent says that the secretary's stay motion is really a motion for reconsideration. It is not. "A ruling on a motion or other interlocutory matter, whether entered by a single judge or a panel, is not binding upon the panel to which the appeal is assigned on the merits, and the merits panel may alter, amend, or vacate it." 11th Cir. R. 27-1(g). As the merits panel, we may alter, amend, or vacate the rulings of the motions panel.

[2] The plaintiffs also argue that vacating the injunctions will cause them irreparable harm under the *Purcell* principle that federal courts generally should not alter state election laws in the period close to an election. *See Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam). But "[t]hat argument defies common sense

25-13007                  Order of the Court                        7

4.  Finally, the public interest lies in electing the public's representatives with the public's chosen map over the new one imposed by the district court.  *See L.W. ex rel. Williams v. Skrmetti*, 73 F.4th 408, 421–22 (6th Cir. 2023) (explaining that "the public interest" in the state "applying the law to its residents . . . weigh[ed] heavily in favor of the [s]tate at this juncture"); *see also Strange v. Searcy*, 574 U.S. 1145, 1145 (2015) (Thomas, J., dissenting) ("The equities and public interest likewise generally weigh in favor of enforcing duly enacted state laws.").[3]

★　★　★　★

Having considered the four factors, including the two most critical ones, they weigh in favor of a stay.  For that reason, we GRANT the secretary's motion and STAY the district court's injunctions pending issuance of the mandate in these appeals.

---

and would turn *Purcell* on its head.  Correcting an erroneous lower court injunction of a state election rule cannot itself constitute a *Purcell* problem." *Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28, 31–32 (2020) (Kavanaugh, J., concurring in denial of application to vacate stay).  In any event, as discussed above, the Supreme Court has vacated similar district court injunctions in recent weeks and was not deterred by *Purcell* considerations.

[3] The plaintiffs argue that a stay will "retroactively deprive[] Alabamians of their legally cast votes," but it does no such thing.  A stay only stays the injunctions pending appeal.  It does nothing about the May 19 election and says nothing about what happens next.

25-13007          ABUDU, J., Dissenting          1

ABUDU, Circuit Judge, Dissenting:

The State of Alabama seeks a stay of the district court's injunction which required Alabama to adopt a remedial plan for its state senate redistricting scheme that would ensure that *all* voters have an equal opportunity to elect their candidate of choice—even if that candidate is not ultimately successful. *See Ala. State Conf. of the NAACP v. Allen*, 809 F. Supp. 3d 1366, 1380–82 (N.D. Ala. 2025) ("*Allen II*").  The majority has granted the motion to stay on the ground that the State, especially in light of the Supreme Court's recent decision in *Louisiana v. Callais*, 146 S. Ct. 1131 (2026), has a strong likelihood of proving that its original plan was not motivated by racial animus when the State decided to, "redr[a]w the boundary lines for its thirty-five senate districts"; and that the court's remedial plan[1] places White voters and the Republican Party at a political disadvantage in contravention of Section 2 of the Voting Rights Act.

Because the district court's findings of fact still support a showing of intentional racial discrimination, and because the court correctly determined that the remedial plan was not created with race as a predominant factor (as opposed to the State's previously adopted plan), the State is not entitled to a stay.  The other factors

---

[1] The State did not propose any plans for the court to consider.  Alabama's Governor decided not to convene the legislature to enact a remedial state map, and the district court, through a special master, received nine proposed remedial plans: three from the Plaintiffs, and six from a non-party minor resident of Alabama.  *Allen II*, 809 F. Supp. 3d at 1371, 1373.

2                    ABUDU, J., Dissenting                25-13007

to be considered—irreparable harm, injury to the movant, and the public interest—also weigh in favor of maintaining the status quo and allowing the district court, in the first instance, to reconsider its legal conclusions in light of *Callais*. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). I, therefore, respectfully dissent.

## I.

As lower courts, including this Court, wrestle with the proper and most honest application of *Callais*, it is important to emphasize all parts of what the Supreme Court held and reasoned. Importantly, the Court affirmed: that when a "State cannot provide a legitimate reason for . . . eliminating all majority-minority districts . . . the inference of racial motivation is strong," *Callais*, 146 S. Ct. at 1156; that "[Section] 2 of the Fifteenth Amendment permits the imposition of liability without demanding that the courts engage in the fraught enterprise of attempting to determine whether the state legislature as an institution . . . was motivated by race," *id.*; and that plaintiffs—whether Black or White—"must disentangle race from politics in proving their case" because "legitimate, nonracial decisions" like politics can be the reason for state districting decisions, *id.* at 1161.

After hearing from multiple witnesses (including cartography experts), viewing multiple proposed redistricting plans, and employing the assistance of a Special Master, the district court made key findings that weigh against the State's hope that *Callais* will allow them to proceed with what the district court deemed a constitutionally flawed, dilutive plan. *See Ala. State Conf. of the*

25-13007                 ABUDU, J., Dissenting                          3

*NAACP v. Allen*, 796 F. Supp. 3d 759, 857 (N.D. Ala. 2025) ("*Allen I*");
*Allen II*, 809 F. Supp. 3d at 1371.  Given that the State is separately
seeking a remand on the merits, the full articulation of the district
court's findings can wait for another day.  However, for purposes
of evaluating the merits of the State's motion to stay, the following
findings are especially relevant.  The district court found that:

- The Plaintiffs established that race, not partisan politics, drove voter polarization as evidenced by the number of White Republicans who repeatedly defeated Black Republicans even when the candidate platforms were identical.  *See id.* at 861–65.

- Alabama legislators repeatedly confirmed that they did not rely on partisan motivations when drawing the challenged district.  *Id.* at 776–79.

- The Plaintiffs' expert did not rely on racial statistics when drawing an illustrative plan for the challenged district, which met all of the state's legitimate districting objectives and political goals.  *Id.* at 791; *see also Allen II*, 809 F. Supp. 3d at 1380 ("[T]he Court is satisfied that race did not predominate in the preparation of Remedial Plan 3.").

- Several of the State's experts failed to offer reliable and credible testimony because they "lack[ed] . . . relevant expertise," "offered opinion testimony without support," "cited only websites (Wikipedia, Quora, and Reddit) with no scholarship or peer-reviewed backup," offered

4　　　　　　　　　Abudu, J., Dissenting　　　　　　25-13007

"testimony [that] does not match reality in Alabama," or contradicted themselves as witnesses. *Allen I*, 796 F. Supp. 3d at 859–61.

Given *Callais*'s instructions regarding the proper application of *Thornburg v. Gingles*,[2] *see Callais*, 146 S. Ct. at 1157, the current record before this Court strongly suggests the Plaintiffs remain entitled to judgment in their favor.

**II.**

Moreover, the other factors for consideration weigh heavily against a stay. *See Snook v. Tr. Co. of Ga. Bank of Savannah, N.A.*, 909 F.2d 480, 486 (11th Cir. 1990) (explaining that a movant's "success in establishing a likelihood it will prevail on the merits does not obviate the necessity to show irreparable harm" (quoting *Ne. Fla. Chapter of Ass'n of Gen Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990))); *see also Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921, 929 (2024) (Mem.) (Kavanaugh, J., concurring)

---

[2] In *Gingles*, the Supreme Court held that a plaintiff had to first prove the existence of racial bloc voting. 478 U.S. 30, 55–56 (1986) ("The purpose of inquiring into the existence of racially polarized voting is twofold: to ascertain whether minority group members constitute a politically cohesive unit and to determine whether whites vote sufficiently as a bloc usually to defeat the minority's preferred candidates."); *Allen I*, 796 F. Supp. 3d at 857 ("In some jurisdictions, evidence may establish that statistically observable differences in Black and White voting patterns are of little practical or legal significance. Not in Alabama."); *see also, e.g., United States v. Brown*, 494 F. Supp. 2d 440, 443, 486–87 (S.D. Miss. 2007), *aff'd*, 561 F.3d 420 (5th Cir. 2009) (involving a Section 2 challenge on behalf of White voters living in a district which was 70% Black and who claimed the electoral scheme diluted their voting strength).

25-13007                   Abudu, J., Dissenting                   5

("If the moving party has not demonstrated irreparable harm, then this Court can avoid delving into the merits.").

First, the majority errs in concluding that the State has shown irreparable injury. *Snook*, 909 F.2d at 486; *Ne. Fla. Chapter*, 896 F.2d at 1285. An irreparable "injury must be neither remote nor speculative, but actual and imminent." *Ne. Fla. Chapter*, 896 F.2d at 1285 (quotation marks and citation omitted). "A delay . . . of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (preliminary injunction context); *see also Beame v. Friends of the Earth*, 434 U.S. 1310, 1313 (1977) (Marshall, J., in chambers) ("The applicants' delay in filing their petition and seeking a stay vitiates much of the force of their allegations of irreparable harm."). Thus, "a party's failure to act with speed or urgency . . . necessarily undermines a finding of irreparable harm." *Wreal*, 840 F.3d at 1248.

Here, the district court entered its injunction in August 2025, and the State moved for a stay for the first time the next week. Once the district court denied that request in October 2025, the State timely asked this Court for the same relief. A panel of this Court denied that motion that same month. *Ala. State Conf. of NAACP v. Allen*, No. 25-13007, 2025 WL 3091433, at *1–2 (11th Cir. Oct. 30, 2025) (unpublished). It has been more than six months since then without meaningful movement in these appeals.

The State did not seek Supreme Court review of the denial of its motion for a stay, nor did it move to expedite these appeals

6                    ABUDU, J., Dissenting                    25-13007

at that time. Instead, it moved to hold the briefing in abeyance pending *Callais* while the injunction remained in place. In the intervening months, predictably, the State operated under the district court's injunction without any issue. Indeed, the State had told the district court that it needed to have a map in place "on or before November 17, 2025" to effectively implement the map "without disruption and confusion."[3] Once November 17, 2025, came and went, it seemed certain that the State would operate its 2026 elections under the terms of the district court's injunction, which it has done.

These facts, unique to this litigation, show that the State's newfound urgency is inconsistent with its conduct over the past six months in a way that makes a stay inappropriate.[4] *See Snook*,

---

[3] The Plaintiffs argue that the State's change in position should be foreclosed under the doctrine of judicial estoppel. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (explaining that this doctrine "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase" (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000))). Regardless of whether they are right on that point, the State's conduct shows it did not act "with [the] speed or urgency" necessary to support its current claim of irreparable harm. *Wreal*, 840 F.3d at 1248.

[4] The State's request for a stay now is really a motion for reconsideration, and our rules and precedents limit the circumstances where reconsideration should be granted. *See, e.g., Michael Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005) (explaining that motions to reconsider generally cannot "relitigate old matters, raise argument or present evidence that could have been raised prior to the" original decision); 11th Cir. R. 8-2 ("A motion to reconsider, vacate, or modify an order granting or denying relief under [FED. R. APP. P.] 8 must be filed within 21 days of the entry of such order."); 11th Cir. R. 27-3 (discouraging repeated requests for reconsideration). While, of course,

909 F.2d at 486; *Ne. Fla. Chapter*, 896 F.2d at 1285; *see also West Virginia v. B.P.J. ex rel. Jackson*, 143 S. Ct. 889, 889 (2023) (Mem.) (Alito, J., dissenting) ("[I]t is a wise rule in general that a litigant whose claim of urgency is belied by its own conduct should not expect discretionary emergency relief from a court."). A stay is an extraordinary and discretionary remedy and the State "bears the burden of showing that the circumstances justify an exercise of [our] discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). Its conduct in the last six months strongly undercuts its claim that it is suffering irreparable injury, and the motion could be denied on that basis alone. *See Labrador*, 144 S. Ct. at 929 (Kavanaugh, J., concurring); *see also Nken*, 556 U.S. at 437 (Kennedy, J., concurring) ("A stay . . . is an extraordinary remedy that should not be granted in the ordinary case, much less awarded as of right.").[5]

## III.

Finally, "the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest."

---

*Callais* provides the State with new legal arguments, it does not follow that the State has acted with the promptness in seeking relief that would justify a stay, let alone reconsideration of a prior un-appealed order from this Court that has been in place for six months.

[5] *See also PFLAG, Inc. v. Trump*, No. 25-1279, 2026 WL 1429738, at *3–6 & n.4 (4th Cir. May 21, 2026) (unpublished) (Benjamin, J., concurring in the denial of rehearing *en banc*) (explaining that a stay is unwarranted where the moving party "unreasonably delayed in seeking" that relief and "conducted the litigation in a manner inconsistent with its plea of irreparable injury").

8                      ABUDU, J., Dissenting                      25-13007

*Nken*, 556 U.S. at 435. "These factors merge when the Government is the opposing party." *Id.*

Here, the potential harm to the public in granting a stay at this late stage is acute. Alabamians participated in a primary election that was held on May 19, 2026. Alabama seeks a stay in part on the theory that it can, or will, undo those election results and hold a new primary election. That request, which may generate widespread confusion, warrants careful consideration, and the Supreme Court has cautioned federal courts to tread carefully when elections already are underway. *See, e.g.*, *Moore v. Harper*, 142 S. Ct. 1089, 1089 (2025) (Mem.) (Kavanaugh, J., concurring); *Frank v. Walker*, 574 U.S. 929, 929 (2014) (Mem.) (Alito, J., dissenting) ("There is a colorable basis for the Court's decision [to stay the decision of the Court of Appeals] due to the proximity of the upcoming general election."); *see also Bell v. Southwell*, 376 F.2d 659, 662 (5th Cir. 1967) ("Drastic, if not staggering, . . . is the Federal voiding of a State election . . . ."). Even if we remand, "[n]o action by this court could change what has been done," *Newman v. State of Ala.*, 683 F.2d 1312, 1317 (11th Cir. 1982), and questions about future elections are exactly the sort of issue that we, following the Supreme Court's lead, *see, e.g.*, *Allen v. Caster*, No. 25-243, ___ S. Ct.___, 2026 WL 1282800, at *1 (May 11, 2026) (Mem.), should entrust to the discretion of the district court judge who has managed this litigation for years.

Finally, voters have a strong interest in ensuring that a State, even after valiant efforts to move past its racist history, does not

repeat that history through the enactment of racially discriminatory redistricting plans. *South Carolina v. Katzenbach*, 383 U.S. 301, 308 (1966) ("The Voting Rights Act was designed by Congress to banish the blight of racial discrimination in voting, which has infected the electoral process in parts of our country for nearly a century."); *Stout ex rel. Stout v. Jefferson Cnty. Bd. of Educ.*, 882 F.3d 988, 1014 (11th Cir. 2018) ("[O]fficial actions motivated by a discriminatory purpose 'have no legitimacy at all under our Constitution.'" (alteration accepted) (quoting *City of Richmond v. United States*, 422 U.S. 358, 378 (1975))). The district court carefully considered the Plaintiffs' claims and concluded that some, but not all, of Alabama's redistricting decisions violated the Voting Rights Act. It explained that, regrettably, "official discrimination on the basis of race has affected Black Alabamians' lives and political participation for a long time, and it continues to affect Black Alabamians' lives and political participation today." *Allen I*, 796 F. Supp. 3d at 866. It then crafted a careful remedy for Alabama's violation and "did not allow race to predominate [the] drawing" of the remedial map. *Id.* at 854; *Allen II*, 809 F. Supp. 3d at 1380–81.

Therefore, even if the district court should have an opportunity to reexamine its conclusions in light of *Callais*, it is far from clear that the district court's conclusions were erroneous under *Callais*'s "updated" test. 146 S. Ct. at 1161. Thus, until the parties reach a final resolution which, again, still weighs in favor of the Plaintiffs at this juncture, Alabama voters are entitled to a redistricting scheme that promotes democracy and true inclusion.

10                      ABUDU, J., Dissenting                      25-13007

★      ★      ★

For these reasons, the State is not entitled to a stay.